Racco Diagnostics v. Maia Pharmaceuticals, 20-1387, Mr. Zimmerman. Good morning, Your Honor. May it please the Court. The District Court erred as a matter of law in construing the functional terms surfactant, surfactant solubilizer, and buffer to effectively eliminate their functions. With respect to the term surfactant, by construing this term to mean an yet is not required to reduce the interfacial tension, the District Court rendered the surfactant optional. Reducing interfacial tension is the only function identified for the surfactant in the patent, and the District Court recognized this. At Appendix Page 21, the District Court stated, the specifications and claims adequately connote the meaning of surfactant. That is, the purpose of adding this compound to the formulation is to reduce the interfacial tension. Mr. Zimmerman, I'm looking at the claim construction. The judge didn't seem to distinguish the construction of one claim versus another, and, of course, they're different, Claim 1, Claim 3, and 6, but looking at the claim construction for buffer, it's defined as an excipient that stabilizes the pH and consequently reduces the risk of stability. I think it means instability, but then there's a long sentence beginning, buffering agents useful in the preparation are as follows. Is that long sentence part of the claim construction of Claim 1? It is, Your Honor, and if you turn to Page 16 of the opinion, the District Court makes that abundantly clear. He states, here, the patent holder substantially defined the buffer to certain ones set forth in the specification and claims, and he ends the paragraph. That may be true of Claim 3, where it's stated where the buffer is, but to term buffer to include all of this long list of materials, that doesn't seem sound. Does it? It isn't, and that was part of the error in the District Court's construction. His first sentence of the construction- But then when you get to Claim 3, that's a proper claim, isn't it, where buffer is defined as? Yes, and the- And you stipulate it to infringement, and so, therefore, don't you lose based on Claim 3? No, Your Honor. The correct interpretation of Claim 3 is that you have to actually perform the buffer function of Claim 1 using one of the components in Claim 3, and the problem with all of these is, while Maya's product contains amino acids, they don't perform these functions in the formulation, and we were denied any opportunity to show that. The District Court- Isn't that a question of validity, operability, and validity isn't before us? No, Your Honor, it's not a question of validity. Infringement turns on, does the amino acid in Maya's product actually perform a buffer function? If not, it's not the claim buffer, and therefore, we don't infringe, and so, by reading the list in and saying that list is predetermined to meet the function, the District Court effectively read the function out of the buffer limitation as he did with the other ones, and so, the District Court's construction would have been correct if he had stopped at the end of the first sentence, that buffers stabilize the pH of single-act formulations of the inventions, and consequently, reduces the risk of chemical stability. The District Court erred by predetermining that the things in the list necessarily meet that function in a given formulation. As the Court is aware, buffering function is dependent on the pH of a particular formulation, and so, you can have components that buffer in some formulations and don't in others, and that was the fundamental error. Your argument is that the claim construction of Claim 1 was incorrect because it should have stopped at the end of the first sentence, and that being the case, your material doesn't meet the functional definition of a properly construed Claim 1. That is correct, Your Honor, and the District Court did not distinguish his buffer construction between Claim 1 or Claim 3. It's the same construction for all, and he read the list into the claim as a definition, and he couldn't have been more clear on page 16 of the opinion. He says, this list of buffers is sufficient to define the term in the context of the patent, and so, he viewed the list as a definition that is predetermined to meet the function, which is not the case. And your stipulation is based on our affirming the claim construction of Claim 1, which you have just said we should not do. Your Honor, the stipulation is under the District Court's construction. Under any other construction, the stipulation vanishes pursuant to its own terms, and that's at 3674 paragraph 4. Mr. Zimmerman, this is Judge Chen. I'm trying to understand your view of how to understand the interrelationship between Claim 1 and Claim 3 as to the buffer term. What if Claim 1 had simply said, for Limitation S, a buffer wherein said buffer is an amino acid, period? And then, an accused product has an amino acid. Why wouldn't that accused product automatically meet the buffer limitation by virtue of having an amino acid? Because you can have an amino acid in a formulation, Your Honor, that has no buffering effect. And so, it was... Right, right. I understand that point of view, but I'm just trying to understand in terms of how to think about the claim. What is the claim communicating to one of skill and the art based on patent law principles? Hasn't the claim invention basically informed all of us that an amino acid is a buffer? A buffer is an amino acid. So, you might be right that it is untrue as a matter of science that particular amino acids are unable to serve the function of a buffer. But nevertheless, the claim as drafted is telling us an amino acid is a buffer. And so, aren't we just stuck with that understanding of the claim? No, rather than having to go through an additional, I don't know, proof inquiry as to whether or not a given amino acid in a given formulation serves said buffering function. Maybe I can clarify, Your Honor. So, Claim 1 simply recites a buffer. And the specification tells us at Column 9, Lines 45 and 46, that buffering agents are employed to stabilize the pH of syncolide formulations of the invention. And so, there was no dispute in the district court that the component, the buffer, actually has to perform that function. And Bracco admitted it at Appendix 2490 and 2495. The dependent claim simply narrows that to a particular list, but it still has to perform the function of Claim 1. So, it's best understood as Claim 1 requires a buffer that performs a particular function, and the dependent claim narrows it to performing that function using a particular thing. The dependent claim doesn't read the function out. It narrows the list of things that are used to perform the required function of the independent claim. Mr. Zimmerman, I understand that. Your point is that the dependent claim should read the function in. The dependent claim narrows the independent claim from performing the function with any buffer to performing the function with a particular list of buffers. Right. Mr. Zimmerman, this is Judge Clevenger. When the patentee chooses to identify a specific material as the buffer, then hasn't the patentee, and in a claim where they say the buffer has to perform the function in the formulation, and for purposes of Claim 3, the buffer is X. I think what Judge Lurie was asking earlier, in that circumstance, hasn't the patentee predetermined that the named ingredient, i.e., in case of Claim 3, the amino acid, does perform the function? If you look at it as a public notice function of claims, I think the presiding judge's question to you was saying, as a matter of public notice of function of claims, when the patentee selects the amino acid as something that performs the function, then why isn't that the predetermination for purposes of the patent? And that if someone comes along and says, I have the amino acid, isn't he saying I have the acid in Claim 3 that performs the function? And to clarify that, I think the answer is no, because if you look at this patent, at Column 10, it tells you about amino acids and that they can be used as stabilizers. It also includes amino acids in the list of surfactant. It concludes them in the list of surfactant solubilizer. It includes them in the list of buffer. The fact that an amino acid can have any one of those functions or multiple of those functions in a given formulation doesn't mean that it necessarily has it in every formulation. And that's the problem here. We've never gotten to the point of, does the amino acid actually serve the buffer function? I believe that was my time. Does the panel have other questions? Well, apparently not at this point. Let's hear from Mr. Rhodes. May it please the Court. In further discussion of the questions, I just want to make sure we're clear on one thing, and that is in the first stipulation between the parties, despite what May is arguing now, May have put in the stipulation that the issue as to whether amino acids fulfilled the buffer surfactant solubilizer and surfactant was thoroughly briefed and considered. At Appendix 3671, that's the first stipulation, May has stated this. And this is a whereas clause that May put in. And it's May's position. It says, May's Markman responsive brief and supporting papers, including the second declaration of Dr. Klibanoff and the exhibits cited therein, each provided factual and legal evidence and arguments as to why amino acids, and in particular, why May's two amino acids, do not meet in shipments. Yes. Mr. Rhodes, we're dealing with claim construction here because that's what the stipulation depends on. And wasn't the Court's claim construction of Claim 1 to include not only the function of a buffer, but all that long list, wasn't that incorrect? Claim construction of a descriptive material as listing all of the possibilities, that's not claim construction. But I agree. Claim 3 was different because Claim 3 had a macus group of all the possibilities, but claim construction shouldn't be limited to what the term means, not a list of all the possibilities that meet that term. Isn't that correct? I think you're correct. But the difference here is we have Claim 3, which helps define the term by listing the fulfilled the buffer. Doesn't Claim 3, which refers to a buffer, have to include the functional meaning from Claim 1? By the inventor's own definition, the buffers are satisfied by amino acids. It's in Claim 3 and several other claims that are of the same structure. It's also in Column 9 of the specification that says that buffering agents can be and are amino acids. It's a list. And I think it's a very helpful list. And you don't see it in that many claim constructions because not everyone claims this way. But there's no way, I don't think, legally, there's no case law. There's no argument that MAYA has ever presented as to why the district court or this court could ignore dependent claims that specify what embodiments are going to fit the claim term. So your view is that even if the construction of Claim 1 was incorrect, the result is the Claim 3 defines, among others, amino acids as meeting that term. That's the heart of this case, is whether the district court or this court could ignore those dependent claims that define the disputed terms as including what MAYA admits is in their product to fulfill that role. Mr. Rhodes, this is Judge Chen. As I understand Mr. Zimmerman's view of Claim 3 and the list of ingredients that are referred to as buffers, I think his argument is that this is a class of ingredients identified here, each of which can serve as a buffer, but not necessarily they always do. Some cases they may not. And so for something like amino acids, there still has to be an evidentiary case made as to a particular amino acid and whether that particular amino acid does a buffering effect or not. And I take it that your view is the way Claim 3 has been drafted, it is declaring that every single amino acid on the planet is a buffer, period. And if it turns out that it can be proven that there's an amino acid out there in a syncoli formulation that does not have any buffering effect, well, then that's an invalidity problem. Is that your position of how to read Claim 3? That's our first position. Our second position, which we took great care to put in the record-and we apologize, it's a huge record-is, as I read in the specification, may have put all its proof in on amino acids. And we put all of our proof in on amino acids and why those two particular amino acids are buffers. Right. But, Mr. Rhodes, this is an appeal from a claim construction, essentially. So we have no way of diving into that kind of fact-bound argument here. The district court certainly didn't make that kind of ruling. So now all that's left for us, I suppose, is to possibly understand what is the legal effect of Claim 3 and what is it saying. And, you know, what's wrong with the other side's take that what is being listed in Claim 3, those are just things that can potentially serve as a buffer, but then you have to still go figure out whether in a particular syncoli formulation, inclusion of any one of those ingredients actually serves as a buffer. What's wrong with that understanding of Claim 3? Well, that's not what the express language of the claim says. That's not what the express language of the specification of Column 9 says. And, by the way, this argument has never been raised by MAYA in its opening and responsive briefs and its expert declarations in the district court. And it has never been raised in this briefing to this court because MAYA has never mentioned those dependent claims with the list, which we believe is the heart of the case. Yes, but Mr. Rhodes, the district court was just simply construing Claim 1. And it wasn't actually construing Claim 3. So, I mean, to say that MAYA didn't argue about Claim 3 is perhaps beside the point. What everyone was focused on was what's the best understanding of buffer as that term is used in Claim 1? And the same thing with surfactant solubilizer in Claim 1. That was never the issue in the case. The case was how buffer should be used in all of the claims where it appears, and the same with the other two terms. And Claim 1 was an example, perhaps, but how that term should be used in all the claims is very important. And this relates very much to all the arguments that were made concerning Claim 40 because Claim 1 is a formulation. And the spec at column 13 says it could be a liquid. It could be a dry powder. Claim 40 is definitely a dry powder. And there's no way a buffer is going to be changing the pH in a dry powder. Let me ask a different question. My other question is, as I understand the stipulation, the final judgment is contingent on the claim construction. And if we, the Federal Circuit, do any modification to any of the claim constructions that are here on appeal, then the case has to go back for further proceedings. And so if we were to say the second sentence for the claim construction of buffer shouldn't be there, and it ought to be removed. And same thing for the other term, the non-exclusive list of ingredients, that second sentence should also be removed for that other term. And isn't that alone enough to require this case to be remanded because we did, in fact, modify the claim construction? With all due respect, that would be a great law school final question. It's a great academic question. But the court doesn't have jurisdiction to take these kinds of issues up. The court can only address a final judgment. And the final judgment here is of infringement. And there has to be a finding of infringement. And Maya's arguments should have related to how claim construction could actually change the final, a finding of infringement. And they never did that. And so under the United States versus Proctor and Gamble case and many others, the appeals court doesn't have jurisdiction to decide underlying orders for academic reasons and reasons of interest. It has to relate to the final judgment. And then there's also the Fed Circuit case law that says that if an argument is not made and they never made the argument as to why a claim construction would change the finding of infringement, it's waived. So that is not, none of those things can be before the court because the court doesn't have jurisdiction to undertake advisory opinions on what claim construction might mean. I don't know what, I don't think that's a signal that your time is up. So please continue. Mr. Rose, this shows closure. I think all of what you're saying depends upon us agreeing with you that Mr. Zimmerman's argument doesn't bear on infringement. If we disagreed with you on that point, then I understood you to be agreeing with Judge Chin that our change of the claim construction would require a remand. I don't believe it would require a remand. If you remove the list, there's still reams of data that are unopposed by our expert, by references, by internal MAEA documents, by their own patent application that say their amino acids are buffers or factors. Did the district court rule on that, reams of evidence? The district court was given that and it- But the district court didn't make any ruling on it. Is that right? It made a ruling that amino acid should be included in the claims, which is what that evidence went to. Well, that's a different question. The district court just, can you please admit for me that the district court never addressed your reams of evidence in reaching a conclusion about the claims or in arriving at a final judgment? I would never admit that. I think the district court- Okay, then where did he say it? Where did he say it? Show it to me. He reviewed the entire record. No, where did he say it? You said he relied on it. Where did he say it? If I said he explicitly relied on it, there's no portion of the order that says that. However- Okay, then why should we believe it? Why should we believe that he did in a silent way? Because it was all consistent with what he found. It's not the- That's not good enough. That's not good enough. Well, I'm not going to assume the district court didn't review the evidence. It didn't review the evidence. Well, I'm not going to assume that he did. I'm not going to assume that he did. So why don't you have another argument if you have any? Okay, well, here's another reason why, besides the lack of jurisdiction, why mayors should not win this appeal. And that is because these particular claims we're focusing on are all similar. And they're a, quote, laundry list of exhibients that were known to fulfill their desired functions. That's the position Maya took in the IPR, the Interparties Review. It filed against the Brocco patent. That's at appendix 2571. Now they're saying that what we need to do is add all kinds of functions to these lists of exhibients. There's no support in the case law for that. And I think that would require a new legal principle to be adopted by the court that has never been done before. That requires plain construction of exhibits. Or elements to also be added in their functions. And in the case of Maya, the functions of their functions and the advantages of their functions. That would change the whole plain construction process. It would change the Markman and Phillips decisions. It would be a major change in patent law. Thank you, counsel. Mr. Zimmerman has some rebuttal time. I'd like to raise just a few brief points. Procedurally, the infringement issue was never reached in the district court. The district court did the claim construction. But expert reports on infringement were never submitted. So Judge Chen, you were correct that that issue was never addressed by the district court. The stipulation expressly addresses what happens if this court changes the claim construction. That's at 3674 paragraph 4. The event the federal circuit reverses, vacates, or remands the course of the construction decision, the stipulation terminates. With respect to the district court's contention that the patentee acted as- Mr. Zimmerman, are you saying that our court, the appellate court, is constrained in what it can look at? Based on how you crafted your stipulation? That is to say, what if, hypothetically, we see the dependent claim as a matter of law telling us something about how to understand the term buffer in claim one? And so even if we don't, as a formal matter, shovel all those items listed in claim three into a formal claim construction of buffer in claim one, nevertheless, we can plainly see as a matter of law the operative effect of how to understand buffer given what is stated in claim three. Are you saying that that interrelationship, that legal interrelationship between claim one and claim three, we are barred from looking at that for purposes of this appeal? No, your honor. You would be free to look at that. But you don't have the requisite findings of what does the buffer, what do the amino acids in Maya's product do for you to be able to say, as a matter of law, they satisfy the construction. Assuming any particular construction requires a function. If you were to say simply having an amino acid is enough, then, yes, the product has amino acids and you could do that. But that would not be a proper construction on this record. And why is that? Just don't, not talking about how your product works, but just in terms of looking at claims one and three on their face. Because the patent specifications that buffering agents are employed to stabilize the pH of syncolytic formulations of the invention. And then at column nine, it tells you useful ones include. But it doesn't answer the question of, in a particular formulation, does an amino acid do this buffering function? And so that finding is not anywhere in the record on this appeal. So that would be a factual determination for the district court in the first instance. But Mr. Zimmerman, Judge Klemenser, what you are saying in response to the claim three discussion is that a patentee, as a matter of law, cannot predetermine function by naming, by naming the specific buffer. I want to, I want to be very clear, Your Honor. A patentee could say in a patent application, for purposes of this patent, buffer means and give you a list. And that would be a definition. In this case, we don't have that. And it was undisputed below that the patentee was not acting as its own lexicographer, but was instead offering a plain and ordinary meaning. And Bracco's expert admitted that if you look at... Mr. Zimmerman, is the correct claim interpretation the ultimate lexicography? If a patentee has made clear in his claim what he has asked him for, he's been a lexicographer through the claim. The whole discussion we've been having is whether or not it would be appropriate here to affirm, notwithstanding the error in the claim construction on claim one, on the ground that claim three reads to carry the first sentence of the buffer definition, i.e. the function, and then it goes on to say in claim three, that function is performed by the male essence. And that's where we differ. Claim three says it can be performed by the things on this list. Show me where the word... How I'm taking the first sentence of the district court's order on claim construction on buffer, and I'm tagging it on to claim three. So we have a... The idea is that... Or claim four, pardon me, say that the buffer has to perform the function, and for purposes of the claim, the buffer is an amino acid. That's the way I'm reading claim three. Yes, and that gets you back to the question of, in the particular accused formulation, does it perform that function? And the pat... Coming around to the same question, because Judge Chen asked it, with regard to revising the independent claim. Say, for example, you had an independent claim that called for a buffer and said, whereas for purposes of this independent claim, buffer is amino acid. Your argument is, whether it was in that form or in my form of the dependent claim, the defendant still gets a chance to prove that the name buffer doesn't perform the function. That is correct. And the question is, why is that so? Why hasn't the patentee told the world the patentee says buffer has to do X, and for purposes of my intention, amino acid. And in a particular patent, if it had said it with that clarity, but here you're looking at a laundry list of potential buffers, a laundry list of potential surfactant solubilizers. And while they can perform those functions in some formulations, they don't perform them in every formulation. And so to prove infringement, you actually have to test and see if they do. But Mr. Zimmerman, you have a stipulation here. That's your problem. And Your Honor, if you look at page 3671 of the Joint Appendix, we were very clear that we were stipulating because there was a list, and that list eliminated the functional aspect. And so we were denied the opportunity. And the district court couldn't have been any more clear. The district court says in the construction of buffer at page 16, the list is defined to be a buffer. And we don't think that's the correct reading in the context of this patent. The patent and the parties agreed below that buffer is a functional term. And you have to look at whether there's actually a buffering effect. And the district court's construction denied us that opportunity. Thank you, Mr. Zimmerman. We'll take the case under submission. And thank you both for your arguments. Thank you, Your Honor. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.